LEMMON, Justice.*
This is an action by two forced heirs, who are the decedent’s daughters of his first marriage, against the decedent’s surviving spouse for reduction of the decedent’s mortis causa and inter vivos donations to the surviving spouse in excess of the disposable portion. The principal issue is whether the decedent’s two sets of inter vivos donations to his daughters, each set made in equal amounts in the same calendar year, must be added back fictitiously into La.Civ.Code art. 1505’s compilation of the mass estate for the purpose of calculating the legitime, or whether the donations fall within the exemption of La.Civ.Code art. 1502, which at the time of the filing of the action for reduction provided in pertinent part:
Any donation inter vivos, from the donor to his descendants, exceeding the quantum of which a person may legally dispose to the prejudice of forced heirs, is not reducible to that quantum if each such forced heir and the root represented by each forced heir receives the same value of property by donation inter vivos during the calendar year. Such donation inter vivos shall not be included in the calculation of the disposable portion as set forth in Article 1234 nor as set forth in Article 1505.
| iFacts
The decedent died testate on October 11, 1991. He was survived by his second wife and by the two children of his deceased first wife.
In his will, the decedent donated a lifetime usufruct over his entire estate, both separate and community property, to his surviving spouse. He further bequeathed the naked ownership of his interest in his residence to his daughters, subject to the surviving spouse’s usufruct. Finally, he left the remainder of his estate to his surviving spouse in full ownership. Thus he left to his surviving spouse all of the property that he owned at the time of his death except the naked ownership of his residence.[1]
In this action, the daughters initially attempted to annul the will. After the decision in Succession of Lauga, 624 So.2d 1156 (La.1993) declared unconstitutional Act 788 of 1989 and Act 147 of 1990,[2] the daughters, who had no forced heirship rights until the acts were declared unconstitutional, filed an amended petition seeking to reduce to the disposable portion the excessive donations inter vivos[3] and mortis causa made to the surviving spouse.[4]
In response, the surviving spouse asserted that if the donations inter vivos made to her were to be fictitiously added back to compile the mass estate, then the cash donations inter vivos made by the decedent to his daughters in the total amount of $78,200 should be fictitiously added back into the succession for the | .^calculation of the disposable portion.[5]
The trial court ruled that none of the donations inter vivos made by the decedent to his children and to his surviving spouse should be included in the mass estate in determining the legitime. Both the surviving spouse and the forced heirs appealed, also raising several additional issues that are no longer involved in the ease.
*1316 The court of appeal reversed that part of the judgment of the trial court that exempted the donations inter vivos to the surviving spouse from the action for reduction. 95-0426 (La.App. 5 Cir. 1/30/96); 668 So.2d 1212. The court reasoned that the donations should be included in the mass estate because there was no specific exemption which would allow the donations to a surviving spouse to be excluded.[6] However, the court of appeal affirmed the trial court’s holding that the donations to the daughters, which were made to each of them in the same amounts in the same calendar year, fell under the specific exemption of La.Civ.Code art. 1502 and were not includable in the mass estate.
On the surviving spouse’s application, this court granted certiorari, believing that the interpretation of the Article 1502 exemption is a significant issue in the law of donations for which this court should provide guidance to the lower courts.[7] 96-0949 (La. 5/31/96); 673 So.2d 1021.

\iCompilation of the Mass Estate

La.Civ.Code art. 1502, as enacted in 1870, provided the basis for the action for reduction, stating that donations inter vivos or mortis causa exceeding the disposable portion are not null, but are reducible to the disposable portion. See also La.Civ.Code art. 1495.
When a forced heir demands reduction of excessive donations made by the decedent, La.Civ.Code art. 1505 requires the court to aggregate all of the decedent’s property at the time of death; then to add fictitiously the property that the decedent disposed of by donation inter vivos;[8] and then, after deducting the debts of the estate, to calculate the disposable portion according to the number of forced heirs. However, because of exemptions in the Code and statutes, not all donations inter vivos are included in the mass estate. Nevertheless, the general rule is that all donations inter vivos are included in the mass estate unless specifically exempted. Frederick William Swaim, Jr. & Kathryn Venturatos Lorio, 10 Louisiana Civil Law Treatise — Succession and Donations § 11.6 (1995).

1981 Legislation

In 1981 the Legislature enacted numerous laws that significantly weakened the position of forced heirs. Cynthia Samuel, The 1981 Regular Session: Successions, Donations, Matrimonial Regimes, and Family Law, 29 La.Bar J. 115 (1981). La.Civ.Code art. 1494 was repealed to eliminate parents as forced heirs, and La.Civ.Code art. 1493 was amended to change the fractions constituting the legitime and the disposable portion so as to make the disposable portion larger. Moreover, certain kinds of donations were exempted from the action for reduction |5,of excessive donations and from the calculation of the legitime, thereby lessening the amount. of property subject to the legitime. These exemptions included donations inter vivos to a spouse of a previous marriage made during that marriage, La.Rev.Stat. 9:2354, and donations to certain charitable, educational or religious organizations made three years prior to the decedent’s death, La.Rev.Stat. 2372. Since the donees of these donations are not forced heirs, then the exemptions of these donations from an action for reduction obviously decreased the potential legitime to the detriment of forced heirs.
Other exemptions were even more prejudicial to forced heirs. Proceeds of insurance on the decedent’s life not only were exempted from the action for reduction if made to a donee other than a forced heir, but also were required to be credited in satisfaction of the legitime if made to a forced heir. La. Civ. Code art. 1505,C. The same exemption/credit provision was made applicable to benefits *1317 under certain deferred compensation plans. La.Civ.Code art. 1505,D.
The exemption at issue in the present case was enacted by La.Acts 1981, No. 765, adding the second paragraph to La.Civ.Code art. 1502.[9] The critical issue in the present case is the legislative intent of the exemption in the second paragraph of Article 1502.

Interpretation of Article 1502 Exemption

The purported purpose of the second paragraph of Article 1502 was to allow a donor to take full advantage of the annual exclusions from gift and estate taxes.[10] It is not clear, however, that such a purpose was accomplished by the | (¡enactment. Article 1502 only exempted donations inter vivos to the decedent’s descendants and then only when made in equal amounts to all descendants by roots during the same calendar year.[11]
Because Article 1502, by its terms, only exempts from reduction those donations inter vivos from the decedent to his or her descendants, the exemption was apparently intended to apply in a forced heir’s action for reduction against a donee who is also a descendant of the decedent. In such an action, equal gifts in the same year to all descendants by roots are not subject to reduction, but unequal gifts in one year or gifts made in different years are reducible and are to be included in the calculation of the legitime because the Article 1502 exemption does not apply.
Whatever the legislative intent in an action for reduction against other descendants, the Article 1502 exemption apparently was not intended to apply when a forced heir brings an action for reduction against a do-nee who is not a descendant of the decedent, since only a forced heir can bring an action for reduction and since the exemption only applies to donations to descendants. We therefore conclude that the exemption does not apply in the present case, and these donations therefore fall under the general rule of inclusion in the mass estate.
_[vThis interpretation is consistent with the 1981 legislative theme that disfavored forced heirs by requiring certain donations to forced heirs, which are exempted when made to non-forced heirs, to be credited in satisfaction of the legitime. Because the donations in the present case do not fall within the narrow exemption of Article 1502 that at most benefits forced heirs only in reduction contests against other descendants, the effect of our interpretation is to require the donations to these forced heirs to be credited in satisfaction of their legitime.

Decree

The judgment of the court of appeal is set aside insofar as it exempted the donations inter vivos to the decedent’s daughters from inclusion in the mass estate and the calculation of the legitime. On the remand ordered by the court of appeal, the district court is ordered to include the donations to the decedent’s daughters in the amount of $58,200 in the mass estate and to recalculate the legi-time in accordance with this decision and the remainder of the decision of the court of appeal.
VICTORY, J., concurs in result.
*1318 BLEICH, J., concurs.
CALOGERO, C.J., dissents and assigns reasons.

 Watson, J., not on panel. Rule IV, Part II, § 3.

. In the descriptive list that valued the decedent's net estate at $357,253, the value of the residence $75,000.

. Under these acts, which limited forced heirship to descendants of the first degree who were under twenty-three years of age or who were so physically or mentally incapacitated that they could not handle their own affairs, the daughters did not qualify as forced heirs.

. The decedent made donations inter vivos to his surviving spouse in the amount of $78,140.

. Article 1502 provides in part that a donation in excess of the disposable portion is not null, but is "only reducible to that quantum.”

. The donations inter vivos to the daughters were $20,000 to each in 1985, $11,600 to each in 1986, and $7,500 to each in 1987. The earlier donations, however, included $10,000 to each daughter that was attributable to the decedent's first wife.

. The 1981 exemption provided by La.Rev.Stat. 9:2354 applies only to a donation inter vivos made by the decedent to the spouse of a previous marriage during the existence of that marriage.

. After this court granted certiorari, the Legislature repealed the Article 1502 exemption by La. Acts 1996, No. 77.

.The present Article 1505A, as amended in 1996, limits the requirement of fictitiously bringing back inter vivos donations to those donations inter vivos made within three years of the decedent's death.

. This paragraph has been described as "the murkiest of the forced heirship legislation” enacted in 1981. Cynthia Samuel, supra, at 118.

. At the Senate committee hearing, the author of the bill explained that the purpose was "to allow inter vivos donations to be made to the descendants of the donor, taking advantage of, to the fullest extent, the annual exclusions for gift tax purposes." He further explained that these donations, when made in the required manner, "would be exempt from the limitation on amount which a donor may dispose of to the prejudice of forced heirs."

. The second paragraph of Article 1502 was repealed by La.Acts 1996, No. 77, which reenacted the first paragraph as the present Article 1503. The Revision Comments states that there is no need for the second paragraph of former Article 1502 because of the adoption in 1995 of La.Rev.Stat. 9:2372 and in 1996 of La.Civ.Code art. 1505,A. Article 1505,A, as amended in 1996, provides:
To determine the reduction to which the donations, either inter vivos or mortis causa, are subject, an aggregate is formed of all property belonging to the donor or testator at the time of his death; to that is fictitiously added the property disposed of by donation inter vivos within three years of the date of the donor’s death, according to its value at the time of the donation, (emphasis added).